UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JAMIE ALEXANDRA DALE, | ) |
| | ) |
|                 **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **CURTIS W. JORDAN,** | )   Civil Action No._____ |
|     <u>Serve</u>: | ) |
|     5617 Villa Drive | ) |
|     Lubbock, TX 79412 | ) |
| | ) |
|                 **Defendant.** | ) |

**COMPLAINT**

COMES NOW the Plaintiff, Jamie Alexandra Dale, and for her Complaint, seeking judgment and an award of execution against the defendant, Curtis W. Jordan, states as follows:

**Nature of the Case**

1. Early in the morning on January 2, 2015, Defendant Curtis W. Jordan brutally and maliciously attacked Plaintiff Jamie Alexandra Dale after returning to her home from a social gathering in Virginia Beach, Virginia. As a direct and proximate result of the attack, Dale suffered serious, permanent, and debilitating injuries and severe emotional distress; and Jordan was charged with three felonies. These felonies including malicious wounding under Va. Code § 18.2-51, strangulation under Va. Code § 18.2-51.6, and larceny of a firearm under Va. Code § 18.2-95. The foregoing criminal charges are set to be tried in the Circuit Court of the City of Virginia Beach on March 21, 2017.

2. This civil Complaint, which arises from the aforementioned attack, includes counts for negligence, gross negligence, willful and wanton negligence, assault and/or battery,

and intentional infliction of emotional distress and seeks an award of compensatory damages against Jordan. Furthermore, because of the willful, wanton, and malicious nature of Jordan's actions, Dale also seeks to recover punitive damages.

## Parties

3. Plaintiff Jamie Alexandra Dale ("Dr. Dale") is a resident of the Commonwealth of Virginia who maintains her permanent domicile in the City of Virginia Beach. Dr. Dale is a medical doctor specializing in orthopedic surgery.

4. Defendant Curtis W. Jordan ("Jordan") is resident of the State of Texas who maintains his permanent domicile in the County of Lubbock and owns a residence in the City of Virginia Beach, Virginia in close proximity to Dr. Dale's home. Jordan is a former college and NFL football player and is also known by his nicknames "Wolfman" and "Cujo".

## Jurisdiction & Venue

5. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest, costs, and attorneys' fees and is between citizens of different states.

6. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to this action occurred herein.

## Background Facts

7. Dr. Dale and Jordan had been dating for approximately 2 years prior to January 1, 2015. During that period, Dr. Dale was subjected to periodic emotional and physical abuse at the hands of Jordan.

8. On the night of January 1, 2015 into the morning of January 2, 2015, Dr. Dale and Jordan traveled to various homes and restaurants to watch college football. Throughout the day, Jordan made repeated snide, vulgar and disparaging comments to Dr. Dale and appeared to be in a foul and agitated state of mind.

9. Dr. Dale and Jordan returned to her residence in the Croatan neighborhood of Virginia Beach, Virginia sometime after midnight on January 2, 2015.

10. Upon arriving at Dr. Dale's residence, Jordan repeatedly screamed and yelled at Dr. Dale, calling her a "whore" and falsely accused her of being amorous with another man in front of him. Jordan screamed at Dr. Dale that she was embarrassing to be seen with and he verbally and physically threatened her.

11. Frustrated by Jordan's incessant abuse and false accusations and in an effort to make him stop, Dr. Dale slapped him once.

12. In response, Jordan, a former college and NFL defensive back, brutally, violently and maliciously attacked Dr. Dale.

13. During the course of the attack, Jordan tackled her and body slammed Dr. Dale to the ground repeatedly all the while slamming her head against the floor.

14. When she tried to get up and escape, Jordan swept Dr. Dale's legs out from underneath her again knocking her to the floor and causing her head to slam against the floor.

15. Jordan then again body slammed Dr. Dale into a doorframe, causing her to violently strike her head again.

16. While Dr. Dale was helpless on the ground, Jordan grabbed Dr. Dale by the shoulders, arms, and wrists, held her down, and again repeatedly slammed her body and head against the floor.

17. Fearing for her life, Dr. Dale escaped briefly and attempted to retrieve an unloaded gun from her bedroom to defend herself.

18. Jordan tackled Dr. Dale again and took the gun. Jordan then forcibly restrained Dr. Dale against the floor and beat and choked her.

19. As a result of Jordan beating and choking her, Dr. Dale lost consciousness.

20. When Dr. Dale regained partial consciousness, she fled to her bedroom where she blocked her bedroom door with a chair.

21. Jordan attempted to forcibly gain access to Dr. Dale's bedroom by banging and beating and attempting to kick the door in, all the while uncontrollably screaming obscenities.

22. As a result of her injuries, Dr. Dale drifted in and out of consciousness and lay bleeding profusely on her bed, close to death.

23. Jordan attempted to clean up the crime scene, gathered some of his personal items, fled the residence, and left Dr. Dale for dead.

24. Prior to departing the crime scene, Jordan stole Dr. Dale's gun.

25. After it was light outside, Jordan returned to the crime scene to obtain personal items he had left there and to further attempt to clean up the crime scene

26. At that point, Dr. Dale regained consciousness and discovered that Jordan was in her bedroom. She begged him to help her because she was in and out of consciousness, bleeding profusely on her bed, had lost massive amounts of blood, and needed emergency medical assistance and was helpless. In response, Jordan screamed more obscenities at her and screamed that Dr. Dale that she had made a mess and he did not care whether or not she died.

27. Instead of helping Dr. Dale, Jordan again attempted to clean Dr. Dale's blood from the crime scene with towels and cleaner all the while ignoring her pleas for help and then he abandoned her to die.

28. Dr. Dale's neighbors became suspicious when they did not see her that morning and came to her home to investigate her whereabouts.

29. Upon arrival Dr. Dale's neighbors found her barely alive as the result of the vicious beating by Jordan. They called 911, and police and EMS units were dispatched to the scene. Dr. Dale was then transported by ambulance to the Emergency Room.

30. EMS and police responding to Dr. Dale's residence noted that there was blood on the bedroom carpet, the hallway carpet, a door frame on the second floor, the stairs leading from the front door to the second floor, and on Dr. Dale's pillow and sheets.

31. As a direct and proximate result of being viciously attacked and beaten by Jordan, Dr. Dale suffered dehydration; neck pain; cuts on her head, and ears; bruising on her face, spine, hands, arms, wrists, shoulders, knees, ankles, neck, and chest; petechiae on the neck; a left high ankle sprain with torn syndesmosis ligaments; a complete tear of the labral ligaments in her right ankle, a partial tear of her right deltoid; a cut over her right Achilles and right heel; and/or other physical injuries. (*See Exhibit A* (photos attached).)

32. As a direct and proximate result of being attacked and beaten by Jordan, Dr. Dale also suffered a traumatic brain injury, post-traumatic stress disorder, and associated neurological, cognitive, behavioral deficits/disorders, and physical manifestations thereof.

33. When questioned by the Virginia Beach police officers who were investigating the crimes, Jordan falsely stated that Dr. Dale assaulted him, broke into his house, and threatened him.

34. Jordan also falsely stated that he had thrown the gun he had stolen from Dr. Dale into Lake Wesley, thereby necessitating a police dive search, only to later allege that he "forgotten" where the gun was.

35. After being arrested for his attack on Dr. Dale, Jordan later falsely obtained warrants for Dr. Dale's arrest for crimes which she did not commit, including assault and battery, brandishing a firearm, and trespassing after being forbidden.

36. Jordan later withdrew these warrants, and each charge was dismissed, but not until after Dr. Dale was falsely arrested and maliciously prosecuted by Jordan.

37. As a direct and proximate result of being viciously attacked and beaten by Jordan, Dr. Dale feared and continues to fear for her life, was forced to live with a friend for a period of time because she was unable to care for herself, and has had to purchase a professionally trained guard dog for security.

38. Jordan has continued to harass and stalk Dr. Dale by using cohorts and private investigators to delve into every aspect of her personal and professional life.

39. Dr. Dale has had to seek Court intervention and has obtained a preliminary protective order against Jordan, which he has violated.

40. Dr. Dale is a well-respected professional and has been unable to engage in her profession as the result of being viciously attacked and beaten by Jordan.

### COUNT ONE – NEGLIGENCE
### FAILURE TO USE ORDINARY CARE

41. Paragraphs 1-40 are incorporated herein and re-alleged as to Count One.

42. Jordan was negligent, including, but not limited to, when he slammed Dr. Dale to the ground, swept Dr. Dale's legs out from underneath her, threw Dr. Dale into a door frame, held

Dr. Dale down and slammed her body against the floor, restrained Dr. Dale against the floor and choked her, and abandoned Dr. Dale to die without any medical attention.

43. Jordan had a duty to Dr. Dale to use ordinary care when he engaged in a physical confrontation/altercation with Dr. Dale, engaged in multiple acts of physical force towards Dr. Dale, and/or left Dr. Dale in an injured condition close to death without any medical attention.

44. By engaging in the aggressive and violent conduct described in detail above, and other such conduct as will be more specifically proved at trial, Jordan breached his duty to Dr. Dale to use ordinary care on January 2, 2015 and was negligent.

45. As a direct and proximate result of Jordan's negligence, Dr. Dale suffered and will continue to suffer damages as set forth herein.

## COUNT TWO – GROSS NEGLIGENCE
## INDIFFERENCE AND ACTING WITH UTTER DISREGARD OF CAUTION

46. This Count is alleged in the alternative.

47. Paragraphs 1-40 are incorporated herein and re-alleged as to Count Two.

48. Jordan's conduct constitutes gross negligence, including, but not limited to, when he tackled and slammed Dr. Dale to the ground, swept Dr. Dale's legs out from underneath her, threw Dr. Dale into a door frame, held Dr. Dale down and beat her body against the floor, slammed Dr. Dale's body against the floor, restrained Dr. Dale against the floor and choked her, and abandoned Dr. Dale to die without any medical attention.

49. Jordan used excessive force in his multiple acts of physical force towards Dr. Dale on January 2, 2015, including his pushing, tossing, sweeping of Dr. Dale's legs, slamming, restraining, beating and/or choking of Dr. Dale, resulting in severe physical injuries to Dr. Dale.

50. After using excessive force when he engaged in multiple acts of physical force towards Dr. Dale on January 2, 2015, Jordan abandoned Dr. Dale to die without any medical attention.

51. Jordan had a duty to Dr. Dale not to act with indifference towards Dr. Dale and/or he exhibited an utter disregard of caution to Dr. Dale, amounting to complete neglect of the safety of Dr. Dale when he engaged in a physical confrontation/altercation with Dr. Dale, engaged in multiple acts of physical force to Dr. Dale, and abandoned Dr. Dale condition close to die without any medical attention.

52. By engaging in the vicious, violent and aggressive conduct described in detail herein, and other such conduct as will be more specifically proved at trial, Jordan breached his duty to Dr. Dale, acting with indifference towards Dr. Dale, and/or exhibiting an utter disregard of caution to Dr. Dale amounting to a complete neglect of Dr. Dale's safety on January 2, 2015. Thus, Jordan was grossly negligent.

53. As a direct and proximate result of Jordan's gross negligence, Dr. Dale suffered and will continue to suffer damages as set forth herein.

**COUNT THREE – WILLFUL AND WANTON NEGLIGENCE
ACTING WITH CONSCIOUS DISREGARD AND RECKLESS INDIFFERENCE**

54. This Count is alleged in the alternative.

55. Paragraphs 1-40 are incorporated herein and re-alleged as to Count Three.

56. Jordan's conduct constitutes willful and wanton negligence, including, but not limited to, when he tackled Dr. Dale to the ground, swept Dr. Dale's legs out from underneath her, slammed Dr. Dale into a door frame, held Dr. Dale down and slammed her head and body against the floor, restrained Dr. Dale against the floor and choked her, and abandoned Dr. Dale to die without any medical attention.

57. Jordan used excessive force by engaging in multiple acts of physical force towards Dr. Dale on January 2, 2015, including his pushing, tossing, sweeping of Dr. Dale's legs, slamming, restraining, and/or choking of Dr. Dale, resulting in severe physical injuries to Dr. Dale.

58. After using excessive force when he engaged in multiple acts of physical force towards Dr. Dale on January 2, 2015, Jordan abandoned Dr. Dale to die without any medical attention.

59. The circumstances and nature of the excessive force Jordan engaged in towards Dr. Dale, the nature of the severe physical injuries Dr. Dale suffered, and the nature of Jordan's actions, as well as his failure to act by abandoning Dr. Dale to die without any medical attention, were such that Jordan exhibited a conscious disregard for Jordan's rights and a reckless indifference to the consequences to Dr. Dale. Jordan was aware, or should have been aware, of his conduct and from his knowledge of existing circumstances, that his conduct would result in severe injury or death to Dr. Dale.

60. Jordan had the duty to Dr. Dale not to act with a conscious disregard for the safety of Dr. Dale and/or with a reckless indifference to the consequences to Dr. Dale when Jordan was aware, or should have been aware, of his conduct and also aware, from his knowledge of existing circumstances, that his conduct would result in severe injury or death to Dr. Dale when he engaged in the numerous and repeated acts of physical force towards Dr. Dale, with excessive force, on January 2, 2015, leaving Dr. Dale to die without medical attention.

61. By engaging in the vicious, violent and aggressive conduct described in detail herein, and other such conduct as will be more specifically proved at trial, Jordan breached his duty to Dr. Dale, acting with conscious disregard for the safety of Dr. Dale and/or with a reckless indifference to the consequences to Dr. Dale when Jordan was aware, or should have been aware,

of his conduct and also aware, from his knowledge of existing circumstances, that his conduct would result in severe injury or death to Dr. Dale on January 2, 2015. Thus, Jordan was willfully and wantonly negligent.

62. As a direct and proximate result of Jordan's willful and wanton negligence, Dr. Dale suffered and will continue to suffer damages as set forth herein.

### COUNT FOUR – ASSAULT AND/OR BATTERY

63. This Count is alleged in the alternative.

64. Paragraphs 1-40 are incorporated herein and re-alleged as to Count Four.

65. By engaging in the aggressive, vicious and violent conduct described in detail above, and such other conduct that will be more specifically proved at trial, Jordan committed a threatening act or various threatening acts intended to cause either harmful or offensive contact with Dr. Dale, or the apprehension of such contact, creating in Dr. Dale's mind a reasonable appreciation and fear of imminent physical injury and/or death.

66. Jordan's actions including, but not limited to, when he tackled Dr. Dale to the ground, swept Dr. Dale's legs out from underneath her, slammed Dr. Dale into a door frame, held Dr. Dale down and repeatedly slammed her body and head against the floor, slammed Dr. Dale's body against the floor, restrained Dr. Dale against the floor and choked her, were done in a rude, insolent, angry, and/or unlawful manner, and caused an unwanted and/or harmful physical contact with Dr. Dale.

67. Dr. Dale did not consent to or authorize the unlawful touching of her by Jordan, including each and all of Jordan's multiple acts of violent physical force to Dr. Dale on January 2, 2015, such that Jordan's acts of violent physical force to Dr. Dale constituted an unwanted touching/battery of Dr. Dale by Jordan.

68. Jordan's actions, as set forth in this Count and elsewhere in this Complaint, were committed without legal justification or excuse.

69. As a direct and proximate result of Jordan's assault and/or battery of Dr. Dale, Dr. Dale suffered and will continue to suffer damages as set forth herein.

## COUNT FIVE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

70. This Count is alleged in the alternative.

71. Paragraphs 1-40 are incorporated herein and re-alleged as to Count Four.

72. By engaging in the vicious, aggressive and violent conduct described in detail above, and such other conduct that will be more specifically proved at trial, Jordan acted with the specific purpose of inflicting emotional distress upon Dr. Dale and/or intended his specific conduct and knew, or should have known, that his conduct would likely result in Dr. Dale suffering emotional distress.

73. Jordan's vicious, aggressive and violent conduct was extreme, outrageous, and/or intolerable in that it offends the generally accepted standards of decency and morality.

74. As a direct and proximate result of Jordan's vicious, aggressive and violent conduct, Dr. Dale suffered and will continue to suffer severe emotional distress and physical manifestations thereof that no reasonable person could be expected to endure.

## COUNT SIX – MALICIOUS PROSECUTION

75. This count is alleged consecutively.

76. Paragraphs 1-40 are incorporated herein and re-alleged as to Count Six.

77. Remarkably, after committing the brutal and vicious attack on Dr. Dale described herein, Jordan instituted and/or cooperated with the institution of criminal proceedings against Dr. Dale.

78.     Those criminal proceedings ended in a favorable manner to Dr. Dale, in that each charge brought against Dr. Dale was dismissed.

79.     Jordan instituted and/or cooperated with the institution of the aforementioned criminal proceedings without probable cause.

80.     Jordan acted with malice by instituting and/or cooperating with the institution of the aforementioned criminal proceedings against Dr. Dale.  Specifically, by procuring warrants against Dr. Dale, Jordan sought to retaliate against Dr. Dale for her cooperation with the criminal prosecution against Jordan arising from his vicious felonious attack.

## COUNT SEVEN – PUNITIVE DAMAGES

81.     This account is alleged in the alternative.

82.     Paragraphs 1-40 are incorporated herein and re-alleged as to Count Five.

83.     Jordan's actions on January 2, 2015, including, but not limited to, when he tackled Dr. Dale to the ground, swept Dr. Dale's legs out from underneath her, slammed Dr. Dale into a door frame, held Dr. Dale down and repeatedly slammed her head and body against the floor, restrained Dr. Dale against the floor and choked her, and abandoned Dr. Dale to die without any medical attention, evinced a willful and/or wanton disregard for Dr. Dale's rights, safety, and life, and Jordan acted with actual malice in undertaking them.

84.     Jordan's actions subsequent to January 2, 2015, when he maliciously caused Dr. Dale to be arrested and prosecuted for crimes without probable cause, evidenced a willful and/or wanton disregard for Dr. Dale's rights, and Jordan acted with actual malice in undertaking them.

85.     Thus, in addition to recovering compensatory damages as allowed by law, Dr. Dale is also entitled to an award of punitive damages against Jordan to punish Jordan for his outrageous conduct and/or to serve as an example to deter him and other from acting in a similar manner.

## DAMAGES

86. As a direct and proximate result of Jordan's negligence, as set forth in Count One, and/or in the alternative, Jordan's gross negligence, as set forth in Count Two, and/or in the alternative, Jordan's willful and wanton negligence, as set forth in Count Three, and/or in the alternative, Jordan's assault and/or battery of Dr. Dale, as set forth in Count Four, and/or in the alternative, Jordan's intentional infliction of emotional distress upon Dr. Dale, as set forth in Count Five, and/or Jordan's malicious prosecution of Dr. Dale, as set forth in Count Six, Dr. Dale suffered severe and permanent personal injuries of body and mind; she was caused to endure medical treatment, and expenses, ongoing and future medical costs and expenses, permanent injury, loss of income in the past and future, loss of earning capacity in the past and future, intense mental anguish, physical pain and suffering, aggravation of pre-existing physical conditions, severe and permanent scarring, inconvenience, and has been otherwise damaged and suffered harm and loss to her person.

## PRAYER FOR RELIEF

WHEREFORE the plaintiff, Jamie Alexandra Dale, moves this court for judgment and an award of execution against defendant, Curtis W. Jordan, in the sum of THIRTY MILLION, SEVEN HUNDRED SIXTY EIGHT THOUSAND, FOUR HUNDRED FIFTY SIX and 00/100 Dollars ($30,768,456.00) in compensatory damages and THREE HUNDRED FIFTY THOUSAND and 00/100 Dollars ($350,000.00) in punitive damages plus prejudgment and postjudgment interest on any damages awarded in this matter from January 2, 2015 to the date of satisfaction of any judgment entered herein, together with the costs incident to this proceeding and any such other relief as justice may dictate under the circumstances.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY.**

JAMIE ALEXANDRA DALE

By _____/s/_____
        Counsel

| | |
|---|---|
| Stephen M. Smith, Esquire (VSB #14362)<br>David B. Holt, Esquire (VSB #64464)<br>Seth D. Scott, Esquire (VSB #80907)<br>BRAIN INJURY LAW CENTER<br>*Co-Counsel for Plaintiff Jamie A. Dale*<br>2100 Kecoughtan Road<br>P.O. Box 1437<br>Hampton, VA 23661-0437<br>(757) 244-7000 Telephone<br>(757) 244-7046 Facsimile<br>ssmith@braininjurylawcenter.com (email)<br>dholt@attorneys4injured.com (email) | C. Stewart Gill, Jr., Esquire (VSB #42789)<br>EAST COAST TRIAL LAWYERS, PLC<br>*Co-Counsel for Plaintiff Jamie A. Dale*<br>381 Edwin Drive, Suite 101<br>Virginia Beach, VA 23462<br>(757) 352-2237 Telephone<br>(757) 352-2220 Facsimile<br>sgill@ectlawyers.com (email) |

Kevin W. Mottley, Esquire (VSB #40179)
Benjamin P. Kyber, Esquire (VSB #85604)
THE MOTTLEY LAW FIRM PLC
*Co-Counsel for Plaintiff Jamie A. Dale*
1700 Bayberry Court, Suite 203
Richmond, Virginia 23226
(804) 930-1022 (telephone)
(804) 767-2592 (fascimile)
kevinmottley@mottleylawfirm.com (email)
benkyber@mottleylawfirm.com (email)